TATUM BROS. REAL ESTATE & INVESTMENT CO. v. SHENK.

SHENK v. TATUM BROS. REAL ESTATE & INVESTMENT CO

(Circuit Court of Appeals, Fifth Circuit. March 8, 1915.)

No. 2718.

ACCOUNT ⊚══22—APPEAL—REMAND FOR STATEMENT OF ACCOUNT.

On appeal by both parties from a judgment in a suit for an accounting, where there was no reference to a master for a statement of the account, and the court stated no account, and did not indicate what items he allowed and what he rejected, and the evidence was such as to render a statement of account necessary, the judgment will be reversed, and the cause remanded, with instructions to refer it to a master for a statement of the account.

[Ed. Note.—For other cases, see Account, Cent. Dig. §§ 23, 24; Dec. Dig. ⊚══9.]

Appeal and Cross-Appeal from the District Court of the United States, for the Southern District of Florida; Rhydon M. Call, Judge.

Suit by W. E. Shenk against the Tatum Bros. Real Estate & Investment Company. Judgment for the complainant for part of the relief prayed for, and defendant appeals, and plaintiff files cross-appeal. Judgment reversed, and cause remanded, with instructions to refer it to a master for a statement of the account.

Wm. P. Smith and Frank B. Shutts, both of Miami, Fla., for appellant.

F. M. Hudson and A. A. Boggs, both of Miami, Fla., for appellee.

Before PARDEE and WALKER, Circuit Judges, and MAXEY, District Judge.

PARDEE, Circuit Judge. W. E. Shenk brought his bill against Tatum Bros. Real Estate & Investment Company, entitling the same "Bill for Accounting and Other Relief," and therein among other things averred:

"(2) Plaintiff further shows unto the court.that in, to wit, the summer of 1910, the defendant corporation was engaged in carrying on a general real estate business, buying and selling lands for its own profit, and also selling on commission as agent and broker for other parties, and in, to wit, the said summer of 1910, the plaintiff was employed by the defendant as a salesman and agent in said business, the period of such employment being indeterminate, and plaintiff's compensation to be by a commission on all sales negotiated by the plaintiff or through the plaintiff's instrumentality, upon such commissions as were from time to time agreed upon between the plaintiff and defendant upon various and sundry tracts of land, and plaintiff has continued his connection with the defendant corporation from that time until the month of October, 1913, and has sold sundry tracts of land for defendant.

"(3) The arrangements between the plaintiff and defendant were such that no fixed periods of settlement of account were adopted, but an open running account was maintained between the plaintiff and defendant; plaintiff being credited from time to time with commissions accrued and drawing on the defendant for such cash as he from time to time required. And plaintiff, owing to the fact that his duties called upon him to travel extensively, did

not keep a complete set of books, and did not make entries showing all the transactions between the parties, but at all times relied upon the defendant corporation to meet any draft which he might make up to the extent of his current balance, and to keep a true and accurate book account of all transactions.

"(4) The defendant has kept books of account purporting to represent all of the transactions between the plaintiff and defendant, and to show forth the true and correct condition of plaintiff's account. Said book account as kept by defendant is made up of several hundred items and runs over a period of nearly four years, and is extensive and complicated, and plaintiff is unable to set forth a full and correct statement of said account from his own books and records, without having a statement from defendant's books.

"(5) Within a period of ten months last past plaintiff has made repeated demands upon the defendant for an accounting and for a true and correct statement of the account between the plaintiff and defendant, but defendant has utterly failed and refused to render to plaintiff such accounting, and pretends to have certain counterclaims against the plaintiff, the exact nature and amount of which are to plaintiff unknown, and has made sundry improper, illegal, fictitious, and unjust charges against plaintiff on its said books.

"(6) The plaintiff would further show unto the court that, if a true and correct statement of the account between the plaintiff and defendant were had, the plaintiff would have a credit balance upon said account of from $6,000 to $9,000; the exact amount of said credit balance being to plaintiff unknown. But by the said improper, illegal, and fictitious charge entries against the plaintiff's account, defendant has endeavored greatly to diminish the said credit balance, or completely to obliterate the same, and now claims and asserts that plaintiff's balance is less than $3,000."

The defendant filed answer to the said bill, therein averring, among other things, as follows:

"(2) As to the averments of the second paragraph, the defendant says that it was, during the summer of 1910, engaged in carrying on a general real estate business, and is now, and at all times between, engaged in carrying on a general real estate business in Dade county, Florida, and that the plaintiff did act in the capacity of salesman and agent in said business; the facts of said employment being as follows: That the plaintiff is a brother-in-law of B. B. Tatum, one of the principal owners of the stock of the defendant corporation, and an officer and director thereof, and that during said summer of 1910, the said B. B. Tatum and his wife visited the plaintiff and his wife in Enid, Oklahoma, and while on said visit the plaintiff became interested in Florida lands, and requested the said B. B. Tatum to permit him to sell land on commission for the defendant company; that the said B. B. Tatum consented that the plaintiff might become a salesman or agent for the defendant, and the amount of commissions or profits to be allowed the plaintiff was left entirely to the said B. B. Tatum, and fully and freely consented to by the plaintiff, and that the plaintiff continued as a special salesman or agent for the defendant until along the latter part of the year 1913, and did sell or help in selling various tracts of land for the defendant, and he was settled with in each instance, when requested, for the full amount of profits due him.

"(3) The defendant, answering the third paragraph of the bill, says that it is true that no fixed periods of settlement were adopted, but that the plaintiff drew money from the defendant from time to time, and it was at that time immaterial to the defendant whether the plaintiff drew the full amount due him, or drew less than was due, or overdrew his account, for the reason that the said B. B. Tatum, an officer of the defendant company, considered it more of a family relation than a business relation, and was disposed to be liberal with the plaintiff. The defendant does not know as to what books or what records the plaintiff kept, if any; but the defendant says that it kept full records of all transactions with the plaintiff, and that the entries on the books were just and fair in every instance, were consented to by the plaintiff, and that he was always settled with on the basis of the books, and he agreed that the settlements were correct.

"(4) The defendant, further answering, says that it is true that it kept accurate books of account, showing transactions between the plaintiff and the defendant, and the defendant attaches hereto and makes a part hereof Exhibits A and B, which are true and correct copies of the entries on these books, showing fully the transactions between the plaintiff and the defendant. And the said books of the defendant show that the plaintiff should be charged with fifty thousand one hundred eighty-nine and $29/100$ dollars ($50,189.29), and should be credited with sixteen thousand two hundred eighty-four and $25/100$ dollars ($16,284.25), leaving a balance due in favor of the defendant of thirty-three thousand nine hundred five and $04/100$ dollars ($33,905.04).

"(5) This defendant, answering further the fifth paragraph of said bill, denies that the plaintiff has made any repeated demands of the defendant for an accounting, and it denies, further, that it has ever failed or refused to render an accounting to the plaintiff, and it says, on the contrary, that shortly after the death of plaintiff's wife he desired to terminate his relation with the defendant company and to remove to another state, and at the time that plaintiff advised defendant of this intended removal the plaintiff and the defendant went over all of the books of the defendant, in so far as they related to the account of the plaintiff, that all of the items were scanned, and inventory was made of the desk, chairs, and such small articles of furniture as had been placed in the office of the defendant by the plaintiff, and a value was fixed, and the defendant, being willing to be more than liberal with the plaintiff on account of the family relation, was willing to waive at that time the large amount due the defendant by the plaintiff as will be shown hereafter, and agreed with the plaintiff that he should have in full settlement of this account certain notes for eight hundred ninety-nine and $73/100$ dollars ($899.73), this amount being contingent upon certain collections to be made by the defendant for the sale of certain lands. The plaintiff agreed fully to this statement as being the correct balance due him, and then and there accepted the same in full payment of any and all claims that might be due him by the defendant. Defendant denies that any improper, illegal, fictitious, or unjust charges have ever been made against the plaintiff on said books, and, on the contrary, defendant alleges that every entry made in favor of or against the plaintiff has been a proper legal and just charge.

"(6) Defendant, answering the sixth paragraph, denies that the plaintiff would have a credit balance of six thousand dollars ($6,000.00) to nine thousand dollars ($9,000.00), or that he would have any credit balance whatever, on said books, or that he would be entitled to any sum of money whatsoever, and denies that it owes plaintiff any amount, and, on the contrary, defendant alleges that plaintiff is indebted to it in the sum of thirty-three thousand nine hundred five and $04/100$ dollars ($33,905.04), as disclosed by statement attached hereto and above referred to. Defendant, further answering, says that the plaintiff had his desk in the office of the defendant during the time of the business association; that he had full and free access to the books of the defendant at any hour of day or night he desired to look them over, and that he could have made a full and complete statement of his account; and defendant denies that it was necessary to institute this suit for an accounting, and defendant alleges that the plaintiff, before the beginning of this suit, had a full knowledge of his account with the defendant, that an account was stated between them to which the plaintiff agreed, and that a settlement was made upon that basis.

"(7) Defendant, further answering said bill, says that the compensation of the plaintiff as hereinabove alleged was left entirely to the judgment of the said B. B. Tatum, and the compensation of each particular sale was a separate agreement unto itself; that the compensation ran from 10 per cent. of the gross sale, in varying amounts to, in one instance, one-half of the profits derived from the sale, and the defendant says that the plaintiff agreed to this arrangement throughout, and was satisfied with the settlement in each instance. Defendant, further answering, says that on one sale in which the plaintiff was interested, namely, a sale of a tract of Everglade land to C. E. Rice & Co., that the plaintiff did not expect to receive any compensation from this sale, because he had stated to the defendant and to the purchasers of

the land that he expected and intended to take an interest in the land as a partner with the purchasers, but that the defendant, on account of the family relation and its good will toward plaintiff, did voluntarily place upon the price of said land the sum of one dollar ($1.00) per acre, hoping thereby to give the plaintiff some additional money out of the transaction, and it expected, after the said sale was consummated and the entire purchase price paid, to give to said plaintiff, not as payment for services, but as a gift, the said sum of one dollar ($1.00) per acre; that the said sale was made to said C. E. Rice & Co., and ten thousand dollars cash was paid; that said C. E. Rice & Co. defaulted in payment thereafter, and that a suit is now pending in this court to have their contract of purchase declared null and void; that when said sale was made the plaintiff was credited by the defendant with the said one dollar ($1.00) per acre, or thirty-one hundred and forty dollars ($3,140.00) upon its books, the defendant expecting to pay said amount to him when said transaction was completed, as before alleged, but upon default of said C. E. Rice & Co., the defendant charged back to the plaintiff the said sum of thirty-one hundred and forty dollars ($3,140.00), less one thousand dollars ($1,000.00), or ten per cent. of the cash payment, and defendant says that this one thousand dollars ($1,000.00) was entirely a gift to the plaintiff; that he never expected or demanded it, and that he expected, and so stated, to make his profit out of a partnership with C. E. Rice & Co.

"The defendant, further answering, says that another transaction which appears on the books of the company shows wherein the defendant is charged with a large sum of money on account of the Ft. Shackelford Land Company sale, and the defendant alleges that the facts are that the plaintiff, desiring to make sale of a large tract of land belonging to certain owners in Cedar Rapids, Iowa, induced the defendant to enter into a contract with certain proposed purchasers whereby the said land should be sold at a large profit to the said purchasers, and, in order to induce them to make said purchase, the defendant should guarantee to the said purchasers a profit of twenty-five per cent. (25%) on their land for a period of twelve months if the purchasers should elect to return said land within that period and demand their profit; that the plaintiff was wholly and totally insolvent, and knew that his guaranty would carry no weight, and knowing, further, that the defendant was a corporation of very large assets, and was able and willing to carry out any guaranties that it might make, induced it to make this representation; and defendant says that the plaintiff agreed that in the event of sale he should receive one-half of the net profits from said sale, and should assume one-half of the liabilities in the event that any should arise or the defendant be called upon to perform its guarantee. Defendant further says that the said land was purchased from the said Cedar Rapids people, and notes given for the purchase price, and the said land was resold through the plaintiff to his purchasers under the guaranty above mentioned and for a fixed price, and that a portion of the purchase price was taken in notes. Defendant further says that before the expiration of the said twelve months the purchasers of said land demanded that the plaintiff and this defendant should repurchase said land, and should pay to them the said profit of twenty-five per cent. (25%); and defendant says that it immediately carried out this said promise, did repurchase said lands, and did pay the said twenty-five per cent. (25%), and that the plaintiff did not then and has not yet, although often requested so to do, pay any portion of the said liabilities incurred in that behalf, and defendant says, further, that the plaintiff, immediately after said land was sold, asked that his portion of the profit in notes be delivered to him, which was done, and which plaintiff immediately discounted without recourse upon himself, and received an amount of approximately six thousand dollars ($6,-000) on said notes, and that said plaintiff has not repaid said notes to the maker thereof, nor to this defendant, and has refused so to do, and defendant has repaid to the makers of said notes the face of said notes with interest thereon."

Thereupon evidence, oral and in writing, involved and conflicting, was taken, and detailed itemized accounts presented, all apparently in

open court, and thereon the matter was submitted to the court below, which rendered the following decree:

"This cause coming on for a final hearing upon the bill of complaint, answers thereto, and testimony taken before the court, and on deposition, and the same having been submitted by the parties hereto, and the court having been advised in the premises; it is ordered, adjudged, and decreed that the equities are with the complainant, W. E. Shenk, and that on an accounting between him and the defendant, Tatum Brothers Investment Company, the said defendant company is due·said complainant the sum of four thousand six hundred and seventy-nine dollars and seventy-nine cents ($4,679.79). It is therefore ordered, adjudged, and decreed that the complainant, W. E. Shenk, do have and recover of and from the defendant, Tatum Bros. Investment Company, the sum of four thousand six hundred and seventy-nine and $^{79}/_{100}$ dollars."

. The transactions in which Shenk claimed an accounting as between principal and agent, and as broker and partner, to say nothing of the items confessed and disputed in the accounts filed, extended over a period of four years, and were so involved that an accounting by somebody was necessary in order to understand the litigated and contested questions to be decided. Neither of the parties asked a reference to a master, and the trial judge took the case on the pleadings and evidence, and rendered judgment for the balance found to be due, without stating the account, or in any way indicating what items he allowed or rejected, or how he arrived at the balance due. Neither party is satisfied with his judgment, and both appeal to this court.

We have looked into the evidence, and find that the account is involved and intricate, and that to pass intelligently upon the issues presented a full and elaborate statement of the account is necessary. As the case ought to have been referred to a master in the court below, we can see no better course to give it here than to remand it, with instructions to refer it to a master for a statement of the correct account between the parties, and thereafter to proceed according to equity rules and principles. Costs of this court to be equally divided.

And it is so ordered.